USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/30/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
LUIS ACEVEDO, : 07 Cr. 378 (SHS)
: 10 Civ. 5544 (SHS)
Petitioner, : OPINION AND ORDER
-against- :
:
UNITED STATES OF AMERICA :
:
Respondent. :
------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

In early 2008, Luis Acevedo pled guilty to conspiring to distribute one kilogram and more of heroin in violation of 21 U.S.C. § 846. In September of that year, he was sentenced principally to a term of 120 months' imprisonment. Acevedo now brings this motion *pro se* pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence on the grounds that (1) counsel incorrectly advised him that statements proffered to the government would be used against him at trial, and that he pled guilty on that basis, (2) counsel failed to translate the indictment and plea agreement into Spanish and as a result he did not fully understand either document at the time of his plea, (3) counsel incorrectly advised him that he could not withdraw his plea without an extraordinary reason, (4) counsel failed to move to dismiss the indictment and failed to move to suppress certain evidence, (5) Acevedo did not understand the meaning of Jencks Act, *Brady*, or *Giglio* when he waived his right to challenge his conviction based on the Government's failure to produce Jencks Act, *Brady*, or *Giglio* material, and (6) appellate counsel provided insufficient notice that she was filing an *Anders* brief. For the reasons set forth below, the motion is denied.

1

I.  **BACKGROUND**

On August 6, 2007, the Government charged Acevedo and three co-defendants with conspiracy to distribute heroin and Alex Oh was appointed to represent Acevedo.

On December 27, Oh accompanied Acevedo to a proffer session with the Government. (*See* Proffer Agreement, Ex. A to Gov't Mem. in Resp. to Acevedo's Mot. under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence ("Gov't Mem.").) At that meeting, Acevedo signed a proffer agreement with the Government that provided that the Government would "not offer in evidence on its case-in-chief, or in connection with any sentencing proceeding for the purpose of determining an appropriate sentence, any statements made by [Acevedo] at the meeting, except in a prosecution for false statements, obstruction of justice or perjury with respect to any acts committed or statements made during or after the meeting or testimony given after the meeting." (*Id.* at 1.) Acevedo's initials appear next to each paragraph of the proffer agreement and both he and Oh signed the agreement. (*See id.*)

The following week, at Oh's request, the Court relieved Oh as defense counsel and substituted David Segal, Acevedo's newly retained counsel, as Acevedo's attorney of record. Order dated January 3, 2008, Crim. Dkt. No. 37.) On January 15, Acevedo pled guilty to Count One of the indictment before Magistrate Judge Andrew Peck. (*See* Tr. of Hearing dated January 15, 2008 ("Plea Hearing Tr."), Ex. C to Gov't Mem.) Acevedo pled guilty pursuant to a written plea agreement which stipulated, *inter alia*, that he would not appeal a sentence within or below the stipulated range under the United States Sentencing Guidelines of 155 to 188 months' imprisonment and that he would not litigate any sentence within or below that range pursuant to 28 U.S.C. § 2255. (*See* Plea Agreement dated January 14, 2008 at A11, Ex. B to Gov't Mem.)

2

At the plea proceeding, Judge Peck asked Acevedo a series of questions to confirm that his plea was knowing and voluntary. Acevedo confirmed, under oath, that he felt fine physically and mentally and had no difficulty understanding the interpreter or the judge. (Plea Hearing Tr. at 4:3-9.) He stated that he understood the charge against him and the possible sentence and confirmed that he had spoken to Mr. Segal about the charge and how he wished to plead. (*Id.* at 4:22-5:9.) Acevedo stated that he was satisfied with Mr. Segal's representation. (*Id.* at 5:10-12.) He confirmed that the plea agreement had been read to him in Spanish and that he had discussed it with Mr. Segal. (*Id.* at 11:1-10.) He stated that he "understood everything" in the plea agreement. (*Id.*) Acevedo also confirmed that the indictment had been translated into Spanish for him. (*Id.* at 18:8-15.) He affirmed his understanding that he had agreed "not to file a direct appeal or litigate under 28 U.S. Code 2255 or 2241" if given a sentence within or below the stipulated range of 155 to 188 months and his understanding that he had waived his right to seek to withdraw his plea or attack his conviction—either directly or collaterally—on the ground that the government failed to produce Jencks Act, *Brady*, or *Giglio* material. (*Id.* at 13:8-15.) Finally, Acevedo confirmed that he was pleading guilty "freely and voluntarily because in fact [he was] guilty," and allocuted to the specific facts of the crime. (*Id.* at 14:19-21, 15:9-16:15.) At the conclusion of the plea allocution, Judge Peck stated that he was recommending to this Court that Acevedo's plea be accepted as knowing and voluntary. (*Id.* at 18:23-19:3.)

Acevedo attended another proffer session with the Government on February 5, 2008, accompanied by Segal. (*See* Proffer Agreement at 2.) At that meeting, Acevedo initialed the same proffer agreement that he had previously signed. (*Id.*)

The Court accepted Acevedo's plea on April 23, 2008. (*See* Order dated April 23, 2008, Crim. Dkt. No. 56.) The next day, Acevedo requested yet another counsel. (Mot. to Req.

Appointment of a Public Defender, Crim. Dkt. No. 57.) However, Acevedo subsequently withdrew that request in a letter to this Court and Segal continued to represent Acevedo. (Letter from Luis Acevedo dated May 1, 2008, Crim. Dkt. No. 58.)

On July 16, 2008, Acevedo appeared for sentencing. (*See* Sentencing Hearing Tr. dated July 16, 2008 ("July 16 Hearing Tr.").) At the hearing, Segal informed the Court that Acevedo wished to change attorneys because "he feels that the plea and the sentence recommendation . . . is not fair." (*Id.* at 2:23-3:11.) The Court relieved Segal and appointed the Criminal Justice Act attorney on duty, Michael Hueston, to represent Acevedo, and adjourned the sentencing. (*Id.* at 12:12-23; Order dated July 16, 2008, Crim. Dkt. No. 63.)

Acevedo appeared for sentencing again on September 2, 2008. The Court sentenced him principally to the mandatory minimum term of 120 months' imprisonment on Count One of the indictment. (*See* Judgment dated September 3, 2008, Crim. Dkt. No. 65.)

Two weeks later, at defendant's request, Hueston filed a timely notice of appeal on Acevedo's behalf. (*See* Notice of Appeal, Crim. Dkt. No. 67.) Approximately one month after that, Hueston moved to be relieved as counsel. (*See* Motion to be Relieved as Counsel dated October 27, 2008, Appellate Dkt., 08-4592-cr.) Marsha Taubenhaus was appointed appellate counsel for Acevedo. (*See* CJA Criminal Appeal Scheduling Order #2 dated November 17, 2008, Appellate Dkt., 08-4592-cr.) On February 26, 2009, Taubenhaus wrote a letter to Acevedo notifying him of her submission pursuant to *Anders v. California*, 386 U.S. 738 (1967). (*See* Letter from Marsha Taubenhaus to Luis Acevedo dated February 26, 2009, attached to Affirmation in Support of Motion Pursuant to *Anders v. California*, Appellate Dkt., 08-4592-cr.) In the letter, Taubenhaus advised Acevedo that she had concluded that there was no non-frivolous issue to raise on appeal on his behalf and notified him of her intention to file a motion

asking the court to relieve her as counsel. (*Id.*) She informed Acevedo that the filing of the motion would probably result in the dismissal of the appeal, but that he could present his own arguments to the court or ask the court to assign a different attorney. (*Id.*) Acevedo did subsequently ask for the appointment of new counsel. (Acevedo's Notice of Motion [for] Appointment of New Counsel dated February 27, 2009 at 1-2, Ex. D to Gov't Mem.)

Taubenhaus filed an *Anders* brief stating that Acevedo knowingly and voluntarily waived his right to appeal his sentence as part of his guilty plea and that there were no non-frivolous issues that could be raised by Acevedo on appeal. (*See Anders* Brief dated February 5, 2009; Mandate from Second Circuit Court of Appeals dated June 15, 2009, Crim. Dkt. No. 79.) On June 15, 2009, the U.S. Court of Appeals for the Second Circuit issued a mandate granting Taubenhaus's motion to withdraw as counsel and granting the Government's motion for summary affirmance of Acevedo's conviction. (Mandate from Second Circuit Court of Appeals dated June 15, 2009, Crim. Dkt. No. 79.) The court also denied Acevedo's motion for the assignment of new counsel as moot. (*Id.*)

Acevedo is currently serving his sentence.

## II. DISCUSSION

### A. *Legal Standard*

Section 2255 allows a convicted person held in federal custody to move the sentencing court to vacate, set aside or correct a sentence if "the court, in sentencing him or her, violated the Constitution or the laws of the United States, improperly exercised jurisdiction, or sentenced him or her beyond the maximum time authorized by law." *Thai v. United States*, 391 F.3d 491, 493 (2d Cir. 2005). A properly filed section 2255 motion must allege that: (1) the sentence violated the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to

impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255. Thus, collateral relief under Section 2255 is only available for "a constitutional error, a lack of jurisdiction in the sentencing court or an error of law or fact that constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.' " *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Where, as here, the movant pled guilty, the inquiry on collateral review is "ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). Relief is available where petitioner's plea was not voluntary and intelligent, *see Bousley*, 523 U.S. at 618-19, or where petitioner received ineffective assistance of counsel in connection with the plea, *see United States v. Hernandez*, 242 F.3d 110, 113-14 (2d Cir. 2001), or in connection with his plea agreement, *see Rosa v. United States*, 170 F. Supp. 2d 388, 397 (S.D.N.Y. 2001).

  *B.* *Acevedo's plea was intelligent.*

Acevedo avers that counsel did not provide him with a copy of the plea agreement or indictment in Spanish, and that he therefore did not "understand some of the provisions of the agreement." (Acevedo's Mem. in Support of his Section 2255 Mot. at 8.) He maintains that he did not understand the import of the Jencks Act, or the case of *Brady v. Maryland*, 373 U.S. 83 (1963), or the case of *Giglio v. United States*, 405 U.S. 150 (1972) when he waived his right to challenge his conviction based on the Government's failure to produce Jencks Act, *Brady*, or *Giglio* material. (*Id.* at 37.) As Acevedo's sworn statements during his plea allocution flatly contradict these claims, and because he has not overcome the presumption of accuracy that ordinarily applies to such statements, the Court finds that Acevedo's plea was intelligent.

To prevail on a claim that a plea was not "intelligent," Acevedo must establish that he did not receive "real notice of the true nature of the charge against him." *Bousley*, 523 U.S. at 618-19. At the plea proceeding, Acevedo confirmed specifically that both the plea agreement and the indictment had been translated into Spanish for him. (Plea Hearing Tr. 11:1-10, 18:8-15.) He also stated that he understood the charge against him and the possible sentence and indicated that he had spoken to Segal about the charge and how he wished to plead. (*Id.* at 4:22-5:9.) He confirmed his understanding that he had waived his right to withdraw his plea or collaterally attack his conviction on the basis that the government failed to produce Jencks Act, *Brady*, or *Giglio* material. (*Id.* at 13: 16-23.) Acevedo told the court that he had discussed the plea agreement with Segal and that he "understood everything" in the plea agreement. (*Id.* at 4:22-5:9, 11:1-10.) Segal's affirmation is consistent with Acevedo's statements at the plea hearing. Segal confirmed that he always ensures that his client "fully understands his choices" and that he was "certain that Mr. Acevedo fully understood the indictment and his choices as to a plea and a trial." (Affirmation of David Segal ("Segal Affirmation") dated August 23, 2012 ¶¶ 6.)

There is a "strong presumption of accuracy" accorded a defendant's statements during a plea allocution. *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir.2001). As a result, "absent a substantial reason to find otherwise," a court does not "abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made." *Id.* The Court credits Acevedo's statements at his plea allocution and finds that his plea was intelligent.

C.  *Counsel was not constitutionally ineffective in advising Acevedo on his plea.*

To demonstrate he was denied his Constitutional right to effective assistance of counsel, Acevedo must "(1) show that counsel's representation fell below an 'objective standard of

reasonableness' under 'prevailing norms of practice,' and (2) 'affirmatively prove prejudice' by showing that there is a reasonable probability that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Rosa v. United States*, 170 F. Supp. 2d 388, 397 (S.D.N.Y. 2001) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). Acevedo's statements at his plea hearing, his signature and initials on the proffer agreement, as well as the affirmation submitted by his former attorney, David Segal, demonstrate that counsel's representation was not constitutionally ineffective.

First, Acevedo argues that Segal was ineffective in failing to translate the indictment and plea agreement into Spanish for him. Not only is this assertion contradicted by Acevedo's sworn statements at his plea hearing, it is also contradicted by Segal's affirmation in response to Acevedo's motion. In the affirmation, Segal writes that "[t]he indictment, plea agreement as well as other documents and other matters were always translated from English into the Spanish language," and maintains that Acevedo "was fully satisfied with my interpreter translating all documents . . . from English to Spanish." (Segal Affirmation ¶¶ 3-4.) He notes that Acevedo expressed no dissatisfaction with Segal's interpreter nor "did he tell my interpreter that he didn't understand him." (*Id.* ¶ 4.) He adds that "[a]t the end of each meeting [Acevedo] shook hands with both of us." (*Id.*) Segal also explains that "the plea agreement was read to and explained to [Acevedo] in the Spanish language," (*id.* ¶ 10) and that Acevedo never requested a Spanish language version of the plea agreement, which had been translated orally for him (*id.* ¶¶ 3-4), or any other document (*id.* ¶ 7).

Second, Acevedo claims that Segal incorrectly advised him that statements made at proffer sessions with the government could be used against him at trial. Segal affirms that "[i]t was explained more than once to Mr. Acevedo that his proffer statements could not be used on

the government's direct case, however, if he [chose] to take the witness stand and say something different from what he said at his proffers or if his attorney opened the door at trial in an opening or on cross-examination or summation or in some way did something that was different from his proffer then the statements could be used against him if the government chose to do so." (*Id.* ¶ 9.) Segal's affirmation is corroborated by Acevedo's initialing each paragraph of the proffer agreement and signing it. (*See* Proffer Agreement, Ex. A to Gov't Mem.) Acevedo initialed the agreement again after his second proffer session. (*Id.*)

Third, Acevedo claims that Segal incorrectly advised him that he could withdraw his guilty plea only for an exceptional reason. Segal provides a detailed account that contradicts Acevedo's version of the facts. Segal explains that "[s]ometime after February 2008 Mr. Acevedo informed me that he wanted to withdraw his plea. I went to visit him with a draft of an affidavit. At this meeting the affidavit to withdraw his plea was read to him and fully discussed as to the truth of his statements, his testifying at the . . . hearing to withdraw the plea, lying under oath and what would happen if the Judge denied or granted the motion." (*Id.* ¶ 13.) Segal notes that he found a draft of this affidavit in his file and writes that "Mr. Acevedo never signed the affidavit." (*Id.* ¶ 14.) Segal explains, in detail, the contents of this draft affidavit, including the reasons for the proposed plea withdrawal and the many aspects of preparing for and proceeding to trial. (*Id.* ¶¶ 14-15.) He adds that Acevedo "told me that he understood everything we talked about." (*Id.* ¶ 15.) Segal also writes that he "never told Mr. Acevedo that he needed an exceptional reason to withdraw his plea nor did I tell him that it was impossible. I told him that withdrawing a plea was difficult. The decision whether or not to withdraw the plea was always Mr. Acevedo's to make." (*Id.* ¶ 16.) Segal notes that he visited Acevedo with a Spanish language interpreter between April 23, 2008 and May 1, 2008, and that "[a]fter a full discussion,

[Acevedo] told [Segal] that he would not go ahead with either the request for appointment of counsel or the motion to withdraw his plea and the affidavit was not used." (*Id.* ¶ 19.)

The Court credits Segal's "detailed and consistent affirmation" over Acevedo's unsupported and "self-serving" assertions regarding his ineffective assistance of counsel claim. *See Reyes v. United States*, 2007 U.S. Dist. LEXIS 75118, at *18-19 (E.D.N.Y. Oct. 10, 2007) (citing *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)); *see also Puglisi v. United States*, 586 F.3d 209, 215 (2d Cir. 2009). Segal's submission, combined with the rest of the record, demonstrates that Segal's representation of Acevedo met an objective standard of reasonableness. However, even if Segal's performance did fall below an objective standard of reasonableness, Acevedo's claims would still fail because he cannot show he was prejudiced by Segal's conduct—i.e., Acevedo has not shown that "but for counsel's errors, [he] would not have pleaded guilty and instead would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Indeed, the record demonstrates that Acevedo had the opportunity to go forward with a trial but, after consideration, decided not to withdraw his plea.

Finally, because the record before the Court is sufficiently detailed to evaluate Acevedo's claims, an evidentiary hearing is not warranted. *See Chang v. United States*, 250 F.3d 79, 85-86 (2d Cir. 2001).

### D. Acevedo's other ineffective assistance of counsel claims are not cognizable.

Acevedo's other ineffective assistance of counsel claims are not cognizable on habeas review. He claims that counsel was ineffective in failing to move (1) to challenge the indictment and the factual basis of the plea,[1] and (2) to suppress the wiretaps and evidence seized from his van. Because Acevedo pled guilty knowingly and voluntarily and because these ineffective

---

[1] Acevedo's claims regarding Segal's failure to challenge the indictment and his failure to challenge the factual basis of the plea are not meaningfully distinct. Both claims rest upon the argument that the indictment was overbroad. (*See* Acevedo's Mem. in Support of his Section 2255 Mot. at 21.)

assistance of counsel claims do not relate to the knowing or voluntary nature of his plea, these claims are waived.

"A knowing and voluntary guilty plea waives all nonjurisdictional defects in the prior proceedings." *United States v. Coffin*, 76 F.3d 494, 496 (2d Cir. 1996). As a result, a "defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.' " *Id.* at 497 (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Acevedo has therefore waived the ineffective assistance of counsel claims that are unrelated to the voluntary and knowing character of his plea.

    D.    *Acevedo received sufficient notice of his appellate counsel's* Anders *brief.*

Acevedo claims that "appellate counsel was ineffective for failing to consult with the movant on non-frivolous grounds for appeal, and for sending movant the *Anders* notice in [E]nglish." (Acevedo's Mem. in Support of his Section 2255 Mot. at 2.) As the record demonstrates that Acevedo had actual notice of the *Anders* brief, the Court rejects this claim.

In *Anders v. California*, 386 U.S. 738 (1967), the U.S. Supreme Court held that appellate counsel may move to withdraw on the basis that no non-frivolous grounds for appeal exist. To properly withdraw pursuant to *Anders*, appellate counsel is required to submit a "brief referring to anything in the record that might arguably support the appeal," along with the request to withdraw. *Id.* at 744. Counsel must also "furnish the client with a copy of the motion and accompanying brief, as well as 'a letter informing the client that he or she has the right to file a pro se brief.' " *United States v. Leyba*, 379 F.3d 53, 54 (2d Cir. 2004) (quoting *United States v.*

*Arrous*, 320 F.3d 355, 358 (2d Cir. 2003)). A defendant is entitled to receive notice of his attorney's *Anders* motion in a language he understands. *See id.* at 55-56.

Taubenhaus submitted a so-called *Anders* brief discussing the possible grounds for appeal in the record. (*Anders* Brief dated February 5, 2009, Appellate Dkt., 08-4592-cr.) Her appellate submission included an affirmation informing the court that she had sent Acevedo a letter with a copy of the brief and the motion advising him that "there are no arguments I can make for you on the appeal." (Letter from Marsha Taubenhaus to Luis Acevedo dated February 6, 2009, attached to Motion to be Relieved Pursuant to *Anders v. California* dated February 11, 2009.) This letter, written in English, informed Acevedo that he had the right to "(1) ask the court to deny my request to be taken off your case, or (2) ask for a different lawyer to be assigned, or (3) submit your own papers to the court explaining to the court what you want the court to do." (*Id.*) Taubenhaus also counseled Acevedo that "[i]f you decide to submit your own papers, you should send them to the court by February 27, 2009." (*Id.*)

The record is clear that Taubenhaus provided written notice to Acevedo in English that she was filing an *Anders* brief and demonstrates that Acevedo had actual notice of the contents of Taubenhaus's letter. Therefore, the requirement that the defendant be "adequately informed" of the filing of the *Anders* brief has been satisfied. *Leyba*, 379 F.3d at 56.

A few weeks after Taubenhaus sent the notice letter to Acevedo, he submitted a motion to the appellate court which conclusively demonstrated his understanding of the letter's contents. (*See* Acevedo's Notice of Motion [for] Appointment of New Counsel dated February 27, 2009.) In that motion, which was submitted within the timeline identified by Taubenhaus, Acevedo requested appointment of new counsel, which was one of the avenues presented by Taubenhaus. (Acevedo's Notice of Motion [for] Appointment of New Counsel dated February 27, 2009 at 1.)

He also indicated his understanding of the filing of the *Anders* brief, writing that "Defense counsel, Marsha R. Tubenhaus [sic], has refuse[d] to argue my points and has refuse[d] to hear my issues." (*Id.*) As Taubenhaus filed a proper *Anders* motion and because Acevedo had actual notice of the substance of that motion and his options in proceeding, the claim of ineffective assistance of appellate counsel is unavailing.

## III. CONCLUSION

For the reasons set forth above, Acevedo's motion is denied. Because Acevedo has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 111-113 (2d Cir. 2000). Finally, pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962).

Dated: New York, New York
August 30, 2011

SO ORDERED:

Sidney H. Stein, U.S.D.J.